UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RODNEY S. PERRY, SR.,

    Plaintiff,

    v.                                                                CAUSE NO. 3:22-CV-259-DRL

LOTT *et al.*,

    Defendants.

## OPINION AND ORDER

Rodney S. Perry, a prisoner without a lawyer, is proceeding in this case on two claims: "against Warden Ron Neal in his official capacity for injunctive relief to provide Rodney S. Perry, Sr., with constitutional conditions of confinement, as required by the Eighth Amendment," and "against Lt. Lott in his individual capacity for compensatory and punitive damages for subjecting Rodney S. Perry, Sr., to unconstitutional conditions of confinement from December 29, 2021, to present, in violation of the Eighth Amendment[.]" ECF 17 at 5. The defendants filed a motion for summary judgment. ECF 150. Mr. Perry filed a response, and the defendants filed a reply. ECF 156, ECF 157. Mr. Perry also filed a motion for leave to file a surreply, and the defendants filed a response. ECF 159, ECF 160.[1] The summary judgment motion is now fully briefed and ripe for ruling.

---

[1] Northern District of Indiana Local Rule 56-1(b) provides an opportunity for only a single response. Nevertheless, the court has reviewed the contents of Mr. Perry's surreply, and concludes the arguments raised in the surreply have no impact on the disposition of this case. His motion to file the surreply is thus granted.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Id*. "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent

evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official that takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997); *see also Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under § 1983, even though he ultimately failed to prevent the injury).

    A. *Lt. Lott.*

Mr. Perry is proceeding against Lt. Lott for being deliberately indifferent to (1) a pest infestation in D-Cellhouse and (2) other unsanitary conditions in his cells. Each sub-claim will be addressed in turn.

Regarding the pest infestation, Lt. Lott attests to the following facts. At all relevant times, Lt. Lott was a lieutenant assigned to the D-Cellhouse in Indiana State Prison (ISP). ECF 150-3 at 1. During 2022, Lt. Lott was generally aware that ISP had pests such as mice, including in D-Cellhouse. *Id.* at 3. Lt. Lott was not in charge of pest control at ISP and had no authority to order or authorize pest control efforts. *Id.* He personally witnessed pest control personnel enter D-Cellhouse on weekly occasions and lay mousetraps and poisoned mouse bait and use various pest repellents *Id.* at 4. In addition to those regular weekly visits, Lt. Lott requested pest control personnel to come on other occasions when he received reports of increased pest activity in the cellhouse. *Id.* Lt. Lott believed the efforts of pest control personnel were successful in significantly reducing the number of

3

pests in D-Cellhouse. *Id.* Other than requesting pest control personnel to come to D-Cellhouse, Lt. Lott had no authority to direct pest control efforts at ISP. *Id.* at 4-5. Specifically, he had no control over the methods used by pest control personnel and wasn't authorized to use any other means to combat the pest situation. *Id*. However, he did authorize that plastic be handed out to inmates so they could block up the holes through which pests might enter their cells. *Id.* at 5.

Lt. Lott argues he was not deliberately indifferent to the pest problem in D-Cellhouse because he took reasonable steps within the scope of his authority to combat the problem by contacting pest control personnel and providing plastic to inmates to fill the gaps in their cells. ECF 151 at 4-7. He argues the steps he took were reasonable, successful, and were the only options he was authorized to take. *Id.* He provides an attestation from Warden Neal that "Lt. Lott had no authority to direct pest control efforts at ISP or in D cellhouse" and "had no authority or control over the methods pest control personnel used." ECF 150-2 at 2.

Mr. Perry responds that Lt. Lott was deliberately indifferent because he didn't take any reasonable steps to remedy the pest problem in D-Cellhouse. ECF 156-1 at 14-16. In support of this argument, Mr. Perry cites several exhibits.

First, Mr. Perry cites to an interrogatory response from Lt. Lott, where Lt. Lott stated he made "no arrangements" to provide inmates with mice traps or pesticides. ECF 156-1 at 14; ECF 87 at 8. But this does not show deliberate indifference, as it is consistent with Lt. Lott's attestation that he had no authority to provide these items to inmates but rather relied on pest control personnel to utilize these items. ECF 150-3 at 5.

4

Second, Mr. Perry cites to the D-Cellhouse's "Visitor's Log" and "Report of Weekly Inspection," and argues these documents show pest control personnel did not make significant efforts to combat the pest problem in D-Cellhouse between December 2021 and February 2022. ECF 156-1 at 15; ECF 90-6; ECF 99-1. Lt. Lott responds that pest control personnel were not required to sign the "Visitor's Log" or fill out weekly inspection reports, but rather kept their own records showing they regularly performed pest control activities in D-Cellhouse. ECF 157 at 9-11. Lt. Lott provides the records from pest control personnel, which show they performed pest control activities in the D-Cellhouse on at least eleven occasions between January 2022 and March 2022. ECF 89-1 at 1-10. Because there is no evidence pest control personnel were required to sign the Visitor's Log or fill out weekly inspection reports, the court accepts the information provided in the pest control records as undisputed, which shows pest control personnel regularly performed their duties in the D-Cellhouse.

Last, Mr. Perry argues Lt. Lott did not "pass out" plastic to inmates like he claims in his affidavit. ECF 156-1 at 15. Mr. Perry cites to his deposition testimony, where he testified he received plastic to place in his cell from "the detail guys" rather than from Lt. Lott. ECF 156-1 at 15; ECF 147 at 46. But this is consistent with Lt. Lott's attestation that he "authorized" that plastic be handed out to inmates to block up holes in their cells. ECF 150-3 at 5. Whether Lt. Lott personally handed out the plastic to the inmates is immaterial.

Accordingly, Lt. Lott has provided undisputed evidence he took reasonable steps to remedy the pest problem in D-Cellhouse by ensuring pest control personnel regularly performed their duties and authorizing that inmates receive plastic to block holes in their

5

cells. Mr. Perry provides no evidence disputing that Lt. Lott took these reasonable steps, and Lt. Lott and Warden Neal attest these were the only steps Lt. Lott was authorized to take to remedy the pest problem. Thus, because Lt. Lott took "reasonable steps" within the scope of his authority to remedy the pest problem in D-Cellhouse, no reasonable jury could conclude he was deliberately indifferent to the problem. *See Bagola*, 131 F.3d at 647-48. Summary judgment is warranted in Lt. Lott's favor on this sub-claim.

Mr. Perry is also proceeding against Lt. Lott for being deliberately indifferent to other unsanitary conditions in his cell, namely urine and dried human excrement in and around the toilet. ECF 17 at 1-2. Lt. Lott argues he wasn't deliberately indifferent to these conditions because he wasn't aware of the conditions and acted reasonably by having cleaning supplies regularly distributed to inmates in D-Cellhouse. ECF 151 at 10-13.

Specifically, Lt. Lott attests to the following facts. During Lt. Lott's assignment to the D-Cellhouse, inmates were given cleaning supplies on Monday and Thursday of each week. ECF 150-3 at 1. Lt. Lott did not personally oversee each inmate being offered cleaning supplies, but regularly saw correctional staff handing out cleaning supplies to inmates and often checked with staff to make sure they had passed out cleaning supplies. *Id.* at 2. At no point was Lt. Lott aware that correctional staff did not pass out cleaning supplies to inmates when they were supposed to. *Id.* Inmates were allowed to keep chemical cleaners and paper towels in their cells in between the times the cleaning supplies were handed out. *Id.*[2] Prior to the filing of this lawsuit in March 2022, Lt. Lott

---

[2] Lt. Lott provides photos of Mr. Perry's cell taken in June 2022, which shows he had bottles of liquid cleaner in his cell. ECF 150-5.

never received any communication from Mr. Perry regarding any unsanitary conditions in his cell, had no knowledge that Mr. Perry's cell was unclean, and believed that every inmate housed in the D-Cellhouse had the ability to clean their cells with cleaning supplies. *Id.*

In his response, Mr. Perry responds he never received any cleaning supplies between December 29, 2021 and February 2022. ECF 156-1 at 18-20. However, even accepting as true that Mr. Perry received no cleaning supplies during this time period, there is no evidence Lt. Lott was aware of that fact. Mr. Perry argues "Exhibits N and O" show that Lt. Lott was aware of the unsanitary conditions of his cell. ECF 156-1 at 21-23; ECF 156-3 at 26-29. However, these exhibits are letters Mr. Perry wrote to Warden Neal, not Lt. Lott, and there is no evidence Lt. Lott had any knowledge of these letters. ECF 156-3 at 26-29. Mr. Perry also points to an email from Warden Neal to Lt. Lott instructing him to give Mr. Perry cleaning supplies (ECF 156-1 at 23; ECF 150-5 at 4), but this email was sent after Mr. Perry filed this lawsuit. Mr. Perry also provides copies of several grievance forms addressed to Lt. Lott that discuss the inadequate living conditions in his cell (ECF 156-1 at 21, 24; ECF 156-2 at 39-42), but none of these documents contain any indication they were ever received by Lt. Lott or any other party. Mr. Perry last points to his deposition testimony that on one occasion in January 2022 he informed Lt. Lott his cell needed to be cleaned while Lt. Lott was walking the range, and Lt. Lott responded he would "try to get [him] some cleaning supplies" but never returned. ECF 156-1 at 22; ECF 147 at 28-29. But this at most shows Lt. Lott was negligent on this one occasion. *See Stockton*, 44 F.4th at 615 ("Negligence, or even objective recklessness, is insufficient to

7

satisfy deliberate indifference."). There is no evidence refuting Lt. Lott's attestation that he believed Mr. Perry and all other inmates were regularly receiving cleaning supplies each Monday and Thursday.

Thus, Lt. Lott has provided undisputed evidence he took reasonable efforts to ensure the cells in D-Cellhouse were sanitary by instructing correctional officers to distribute cleaning supplies twice per week and allowing inmates to keep cleaning supplies in their cells. There is no evidence Lt. Lott was aware Mr. Perry was not being provided cleaning supplies between December 2021 and February 2022. Based on this evidence, no reasonable jury could conclude Lt. Lott exhibited a "total unconcern" for Mr. Perry's welfare in the face of serious risks. *See Stockton*, 44 F.4th at 615. Summary judgment is therefore warranted in favor of Lt. Lott on this sub-claim.

B. *Warden Neal.*

Warden Neal argues summary judgment is warranted in his favor because the claim against him is now moot, as Mr. Perry testified at his deposition that he was transferred from D-Cellhouse to C-Cellhouse in December 2022 and is no longer experiencing any of the allegedly unconstitutional conditions at issue in this case. ECF 151 at 3-4; *see* ECF 147 at 48-53, ECF 148 at 16. In his response, Mr. Perry concedes he is no longer experiencing the unconstitutional conditions at issue in this case, but argues his claim against Warden Neal can nevertheless proceed because Warden Neal was deliberately indifferent to those conditions at the time they existed. ECF 156-1 at 11-12. But Mr. Perry is proceeding against Warden Neal only "in his official capacity for injunctive relief to provide [him] with constitutional conditions of confinement." ECF 17

8

at 5. Because Mr. Perry concedes he is no longer experiencing the unconstitutional conditions at issue in this case, the undisputed facts show his claim against Warden Neal is now moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Summary judgment is therefore warranted in favor of Warden Neal.

C. *Motion for Sanctions.*

The defendants filed a motion seeking sanctions for Mr. Perry's failure to cooperate in the discovery process even after the court granted their motion to compel. ECF 144. The motion asks that Mr. Perry be sanctioned with dismissal of this case. The motion is well-founded. However, because summary judgment must be granted and this case will be dismissed on the merits, the court declines to rule on the request for sanctions. Mr. Perry has other pending cases in this court, and he is cautioned that any similar behavior in other cases could result in sanctions. Sanctions could include fines, dismissal, or a ban on filing in this court.

For these reasons, the court:

(1) GRANTS Mr. Perry's motion for leave to file a surreply (ECF 159);

(2) DENIES AS MOOT the defendants' motion for sanctions (ECF 144);

(3) GRANTS the defendants' summary judgment motion (ECF 150);

(4) DIRECTS the clerk to enter judgment in favor of the defendants and against Rodney S. Perry and to close this case.

SO ORDERED.

June 26, 2024                                         *s/ Damon R. Leichty*
                                                                   Judge, United States District Court